IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| STEPHEN CAULFIELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:20-cv-03278-RK |
| | ) |
| TEXAS ROADHOUSE HOLDINGS, LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is a motion for summary judgment filed by Defendant Texas Roadhouse Holdings, LLC. (Doc. 43.) The motion for summary judgment is fully briefed. (Docs. 44, 45, 48.) After careful consideration, and for the reasons explained below, the motion is **DENIED**.

### I. Background

On March 28, 2019, Plaintiff visited Defendant Texas Roadhouse Holdings, LLC's ("Texas Roadhouse") restaurant in Springfield, Missouri. As Plaintiff walked from the parking lot toward the entrance of the restaurant, he saw peanuts and peanut shells scattered on the ground. (Doc. 46 at 7, ¶ 4.) Plaintiff knew the restaurant had a wooden barrel full of peanuts inside the front door of the restaurant, from which people would take handfuls to eat as they were entering and exiting the restaurant. (*Id*. at ¶ 6.) In his deposition, Plaintiff testified as he was walking towards the door from the parking lot, he stepped on a peanut with his right foot, which caused his right foot to roll and his left foot to catch on the curb. Plaintiff lost his balance and fell forward, ultimately striking his face on the metal divider of the front doors to the restaurant. (Doc. 43-3 at 16:24-17:8.) Plaintiff fell at the only public entrance and exit to the restaurant. (Doc. 48-1 at 2, ¶ 4.)

In addition, the parties agree for purposes of summary judgment: Texas Roadhouse provided peanuts to its customers while they waited to be seated, there were no trash cans outside the entryway,[1] and customers would dispose of peanut shells by throwing them on the ground

---

[1] While it is uncontroverted there were no trash cans outside the entryway of the restaurant, John Cunningham, a managing partner at the Springfield Texas Roadhouse restaurant, testified at his deposition that people would dispose of peanut shells in both a nearby planter and a receptacle for cigarette butts, although he agreed a lot of peanut shells nevertheless ended up on the ground. (Doc. 45-2 at 18:2-10.)

(including in the area where Plaintiff slipped and fell). (*Id.* at ¶¶ 7-9.) Additionally, Texas Roadhouse acknowledges it "periodically had an employee inspect the area of [P]laintiff's fall for peanut shells and remove the peanut shells in the area of [P]laintiff's fall." (*Id.* at ¶¶ 10, 11.)

## II. Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also De Rossitte v. Correct Care Sols., LLC*, 22 F.4th 796, 802 (8th Cir. 2022). When applying the standard in Federal Rule of Civil Procedure 56(a), the Court must view the evidence in the light most favorable to the nonmoving party, and give the benefit of all inferences that may be reasonably drawn from the evidence to that party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Recio v. Creighton Univ.*, 521 F.3d 934, 938 (8th Cir. 2008). "A moving party is 'entitled to judgment as a matter of law' if the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof." *Woodsmith Pub. Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (other citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita*, 475 U.S. at 587).

## III. Discussion

Texas Roadhouse argues that it is entitled to summary judgment in this premises liability action because the dangerous condition – peanut shells and peanuts on the ground – was open and obvious as a matter of law, and therefore it owed no duty to Plaintiff.

Under Missouri law, "a landowner owes a duty to use reasonable and ordinary care to prevent injury to invitees."[2] *State ex rel. Union Elec. Co. v. Dolan*, 256 S.W.3d 77, 83 (Mo. banc 2008) (citing Restatement (Second) of Torts § 343 (Am. L. Inst. 1965) ("Restatement (Second)")). Generally, to establish a cause of action for premises liability, Plaintiff (as an invitee) must prove:

> (1) a dangerous condition existed on defendant's property which involved an unreasonable risk[,] (2) defendant knew, or by using ordinary care should have known, of the dangerous condition, (3) defendant failed to use ordinary care in

---

[2] The parties agree that Plaintiff is an "invitee," or a "person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Harris*, 857 S.W.2d at 225 (quoting Restatement (Second) of Torts § 332 (Am. L. Inst. 1965)).

2

removing or warning of the danger, and (4) plaintiff sustained injuries as a result of the dangerous condition.

*Koontz v. QuikTrip Corp.*, No. 4:12-00695-CV-DGK, 2013 WL 3448081, at *2 (W.D. Mo. July 9, 2013) (citing *Steward v. Baywood Villages Condo. Ass'n*, 134 S.W.3d 679, 682 (Mo. Ct. App. 2004)). In other words, under Missouri premises-liability law, a landowner is liable to an invitee for injuries caused by a condition on the land *only if* the landowner:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that [the invitees] will not discover or realize the danger or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect [the invitees] against the danger.

*Harris v. Niehaus*, 857 S.W.2d 222, 225-26 (Mo. banc 1993) (citing Restatement (Second) § 343).

In considering the second element of the Restatement (Second), above, Missouri courts have recognized "a possessor of land does not have a duty to protect invitees against conditions that are open and obvious as a matter of law." *Peterson v. Summit Fitness, Inc.*, 920 S.W.2d 928, 933 (Mo. Ct. App. 1996) (citation omitted). This open-and-obvious exception to premises liability is itself limited, however. As the Missouri Supreme Court has explained

> [W]hen the dangerous condition is so open and obvious that the invitee should reasonably be expected to discover it and realize the danger, a possessor of land does *not* breach the standard of care owed to invitees "unless the possessor should anticipate the harm despite such knowledge or obviousness."

857 S.W.2d at 226 (quoting Restatement (Second) § 343, cmt. b). Under Missouri law, then, a landowner is not liable to an invitee where "[1] the danger is open and obvious as a matter of law and [2] the risk of harm exists only if the plaintiff fails to exercise due care." *Harris*, 857 S.W.2d at 227. Stated differently, even if a dangerous condition is open and obvious as a matter of law, a landowner may still be liable to an invitee "if [the] landowner should anticipate the harm despite the obviousness of the risk." *Huxoll v. McAllister's Body & Frame, Inc.*, 129 S.W.3d 33, 35 (Mo. Ct. App. 2004); *accord Christian v. Saint Francis Med. Ctr.*, 536 S.W.3d 356, 358-59 (Mo. Ct. App. 2017) ("An open and obvious danger dispenses with the duty to warn invitees unless the possessor should anticipate that an invitee will suffer harm despite her constructive knowledge of the condition.") (Citation omitted).

To be certain, landowners are "entitled to expect that their invitees will exercise ordinary perception, intelligence and judgment, discover [the] obvious condition, appreciate the risk it

3

present[s], and take the minimal steps necessary to avert a tragedy." *Harris*, 857 S.W.2d at 226; *see also* Restatement (Second) § 343A, cmt. b (explaining that "'obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man . . . exercising ordinary perception, intelligence, and judgment"). Nonetheless, landowners may be liable to invitees even when a dangerous condition is open and obvious as a matter of law "if the landowner should anticipate that the risk of harm exists even if the invitee exercises due care." *Hellmann v. Droege's Super Market, Inc.*, 943 S.W.2d 655, 659 (Mo. Ct. App. 1997) (en banc). In particular, in *Hellmann*, the Missouri Court of Appeals recognized "a landowner still bears a measure of liability where he should recognize that a person will proceed to encounter an open and obvious hazard because the benefits for the invitee *and* the property owner make it foreseeable." *Id.* (citing Restatement (Second) § 343A, cmt. f). "Whether or not the landowner should have anticipated that an invitee would be harmed, despite an open and obvious hazard, is a matter for the jury." *Id.*

In arguing it is entitled to summary judgment because the peanut shells and peanuts constitute an open and obvious condition as a matter of law (and therefore it owed no duty to Plaintiff), Texas Roadhouse primarily relies on *Fisher v. Northmoor United Methodist Church*, 679 S.W.2d 305 (Mo. Ct. App. 1984). In *Fisher*, the plaintiff sued the landowner after an unsecured extension ladder that had been leaned up against the building (and which plaintiff had helped to set in place) fell and struck the plaintiff. *Id.* at 306. The state court reversed a jury verdict in favor of the plaintiff, finding as a matter of law the defendant-landowner did not have a duty to warn the plaintiff because the defendant-landowner "had no knowledge about the condition of the ladder superior to the knowledge which [the plaintiff] had or could have acquired." *Id.* at 307. In doing so, the state court recognized premises liability is ultimately based upon "the possessor's . . . superior knowledge of the dangerous condition which results in injury to the invitee." *Id.* at 306. Thus, the state court reasoned, "[i]f the dangerous condition is obvious and known by the invitee or is discoverable by the exercise of ordinary care by the invitee, actionable negligence is not established[.]" *Id*.

As set out above, however, under Missouri premises-liability law, whether a condition is "open and obvious" does not definitively absolve a landowner of premises liability. Instead, a landowner in this circumstance may be effectively absolved of liability as to an invitee where both (1) the dangerous condition is open and obvious as a matter of law and (2) the risk of harm exists only if the plaintiff fails to exercise due care or, stated differently, if the landowner should not

4

reasonably anticipate the harm despite the obviousness of the risk. *Harris*, 857 S.W.2d at 227; *Huxoll*, 129 S.W.3d at 35; *Hellmann*, 943 S.W.2d at 659; *see also Asbridge v. United States*, No. 2:17-CV-00025-MDH, 2019 WL 3976317, at *4 (W.D. Mo. April 5, 2019) (recognizing under Missouri law while generally a landowner does not breach any duty where the conditions are open and obvious as a matter of law, "liability can still arise if the possessor of land should anticipate the harm despite the invitee's knowledge") (citing *Smith v. Callaway Bank*, 359 S.W.3d 545, 548 (Mo. Ct. App. 2012)); *Nichols v. Koch*, 741 S.W.2d 87, 88 (Mo. Ct. App. 1987) (recognizing while landowners' duty to invitees is "limited to acquainting the invitee with dangerous conditions" and therefore if the condition is open and obvious – i.e., if knowledge of the dangerous condition is equal – the landowner owes no duty, Restatement (Second) § 343A provides an exception "if [the landowner] should anticipate an unreasonable risk of harm to the invitee notwithstanding the invitee's knowledge of the obvious nature of the condition").[3]

In *Harris*, for example, the plaintiff sued the landowner after her parked car (with three children inside) rolled down a sloped road, through a thinned grove of trees and brush at the end of the road, and into a lake. 857 S.W.2d at 224-25. The Missouri Supreme Court ultimately held the premises liability case should not have been submitted to the jury because: (1) the "natural condition" of the road (that is, that the road slopes down toward the lake with only a natural barrier between the road and the lake) was open and obvious as a matter of law, and (2) no evidence supported a finding that the defendant's conduct fell below the standard of care because it was reasonable to "rely on anyone driving a car in the subdivision to employ the simple means at their disposal [that is, when leaving children in the car unattended to "take effective measures to ensure that the car is secured from the operation of the laws of gravity"] to prevent this harm from occurring." *Id.* at 227.

---

[3] In *Fisher*, there was no indication the landowner itself had any knowledge about the dangerous condition – i.e., the unsecured ladder leaned against the building. The plaintiff and others had "responded to a request . . . for volunteers to aid in repair of the church bell tower," and it was plaintiff and other volunteers who had placed the extension ladder, donated for the work project by a fellow volunteer, against the building and left it unsecured. 679 S.W.2d at 306. Thus, the court found the landowner "had no knowledge about the condition of the ladder superior to the knowledge which [the plaintiff] had or could have acquired by the exercise of reasonable care." *Id.* at 307. The court in *Fisher* did not have occasion to consider the exception to the open-and-obvious rule, that a landowner may be liable even as to open-and-obvious conditions when the risk of harm exists even if the plaintiff exercises due care or if the landowner should reasonably anticipate the harm despite the obviousness of the risk. To the extent *Fisher* can be read to suggest a landowner is not liable to an invitee where the dangerous condition is open and obvious without exception, that is not the law in Missouri. *See, e.g.*, *Harris*, 857 S.W.2d at 227.

5

Similarly, in *Huxoll*, the Missouri Court of Appeals held a plaintiff failed to present a submissible case (affirming a directed verdict in favor of the defendant) after the plaintiff was injured while walking over or around a pile of sheet metal upon exiting the body shop through a locked door. 129 S.W.3d at 33. Although the pile of sheet metal was an open and obvious danger, the state court concluded "the record establishes that the [body shop] would reasonably have anticipated that [plaintiff] had other ways to exit the building besides this door," including an open bay door, an open regular door, or asking an employee to make a path through another blocked bay door. *Huxoll*, 129 S.W.3d at 36. The state court ultimately found: "Under these facts, the [defendant] could not, as a matter of law, reasonably anticipate that an invitee would open the locked door, recognize the danger of the sharp metal, and still attempt to 'get around' it." *Id.* at 37.

By contrast, in *Hellmann*, the Missouri Court of Appeals reversed a directed verdict in favor of the landowner in a premises liability action. 943 S.W.2d 655. There, the plaintiff sued a store after she slipped and fell on ice in the store's parking lot. The store argued the icy parking lot constituted an open and obvious danger as a matter of law, and therefore it had no duty to the plaintiff. Although the court agreed the icy conditions of the parking lot were open and obvious, it ultimately concluded the premises liability claim should have been submitted to the jury because there was evidence in the record that "would support a finding [the grocery store] actually did anticipate harm to its invitees." *Hellmann*, 943 S.W.2d at 659.

Specifically, the *Hellmann* court found from the evidentiary record: (1) there was no conclusive evidence a path totally clear of ice was available to the plaintiff at the time, (2) a grocery store employee had applied calcium chloride to the parking lot the morning prior to the plaintiff's slip and fall, and another employee had attempted to chip away the ice on a portion of the parking lot the morning of plaintiff's slip and fall, and (3) a grocery store employee had helped the plaintiff to her truck as she held on to the grocery cart. *Id*. The court of appeals found this evidence "suggest[s] a finding [defendant] did anticipate that its customers may fall on the ice," and therefore there was a submissible case whether the defendant did (or should have) anticipate(d) the harm, thus breaching its duty to the plaintiff as an invitee. In addition, the state court held the defendant "had a duty to anticipate that an invitee . . . might park her vehicle on an ice or patchy space, traverse the parking lot to fulfill her shopping objective, and be harmed while doing so." *Id*. The court found a submissible question of fact "whether a reasonable person would park on

6

an icy store parking lot and take reasonably anticipated risk of walking on ice in order to enjoy the benefit of shopping at [defendant's store]." *Id.* at 660.

Here, even if Texas Roadhouse is correct that the peanut shells and peanuts on the ground of the parking lot constitute an open and obvious condition as a matter of law, Texas Roadhouse has not demonstrated it is entitled to summary judgment. As explained above, under Missouri law, including the Restatement (Second) as adopted by the Missouri Supreme Court, Texas Roadhouse would owe no duty to Plaintiff as an invitee only if it would also not be reasonably expected to anticipate the harm from the dangerous condition (i.e., the peanut shells and peanuts on the ground) despite the obviousness of the condition or even Plaintiff's knowledge of the condition. *See Smith*, 359 S.W.3d at 548. When viewing the evidence in the summary judgment record in a light most favorable to Plaintiff, the Court must conclude there remains at least a question of fact whether Texas Roadhouse should have – or did – reasonably anticipate the harm or hazard from the peanut shells and peanuts in the parking lot.

Specifically, the evidence shows that Texas Roadhouse provided peanuts to its customers while they were waiting to be seated. The undisputed facts also show Texas Roadhouse knew its customers waited "all over" until they were seated, and that no trash can was provided outside the sole public entrance to the restaurant. Texas Roadhouse knew its customers would throw peanut shells on the ground and, in fact, restaurant employees were periodically sent outside to check the area around the entryway for peanut shells, including the parking lot area where Plaintiff fell, and to remove peanut shells.

Unlike *Huxol*, where the landowner could reasonably anticipate an invitee would use other accessible (or relatively easily accessible) routes to exit the body shop, routes that would allow the invitee to avoid the clearly visible dangerous condition, here there was only one public entrance to the restaurant, at which customers had access to peanuts provided by Texas Roadhouse and regularly threw them on the ground while waiting to be seated. *See also Allen v. 32nd Jud. Cir.*, SC 98929, at 12 (Mo. banc Mar. 1, 2022) (slip op.), modifying on denial of rehearing, 638 S.W.3d 880 (Mo. banc 2022) (recognizing "[w]hile the condition of the stairway may have been open and obvious, the State should have anticipated the harm that befell [the plaintiff]," particularly because "there was no evidence to suggest [the plaintiff] had an alternative route" available and therefore the defendant "had reason to anticipate the defective, deficient stairs could harm [the plaintiff] despite her familiarity with them"). Additionally, and more importantly, similar to the preventive

7

efforts of the grocery store in *Hellmann* to clear the parking lot of ice, the summary judgment record also shows Texas Roadhouse periodically had its employees check the area outside the entryway for peanut shells and remove the peanut shells in the very area where Plaintiff slipped and fell. In sum, these undisputed facts raise at least a question of fact for the fact-finder whether Texas Roadhouse did or should have reasonably anticipated that its customers may, while entering the restaurant through the sole public entrance, slip and fall on the peanut shells or peanuts that had been thrown on the ground by other customers waiting to be seated.

Simply, in a premises liability case such as this one, "[w]here there exists evidence which suggests that the defendant breached the[] standard of care, the case must be submitted to the jury." *Hellmann*, 943 S.W.2d at 659 (citing *Harris*, 857 S.W.2d at 225). Thus, regardless of whether the peanut shells and peanuts on the ground of the parking lot constitute an open and obvious dangerous condition as a matter of law, the Court cannot conclude Texas Roadhouse is entitled to summary judgment as to Plaintiff's premises liability claim.

## IV. Conclusion

For the reasons explained above, Defendant Texas Roadhouse Holdings, LLC's motion for summary judgment (Doc. 43.) is **DENIED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: June 22, 2022